United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EAST BAY MUNICIPAL UTILITY
DISTRICT, et al.,

              Plaintiffs,

      v.

BALFOUR BEATTY INFRASTRUCTURE,
INC.,

              Defendant.

Case No.  13-cv-02032-WHO

**ORDER GRANTING DEFENDANT'S
MOTIONS FOR JUDGMENT ON THE
PLEADINGS WITHOUT PREJUDICE;
DENYING DEFENDANT'S MOTION
TO DISMISS; ADDRESSING PARTIES'
DISCOVERY DISPUTE**

Re: Dkt. Nos. 37, 38, 47

## INTRODUCTION

*Qui tam* plaintiffs Bill Haley, Harry Rotz, and Lew Long (collectively, "Qui Tam

Plaintiffs") filed suit on behalf of the East Bay Municipal Utility District, Sacramento County

Water Agency, Freeport Water Authority, and the Cities of Sacramento, Roseville, and Rio Vista

(collectively, the "Public Entities"), alleging that defendant Balfour Beatty Infrastructure, Inc., a

public works contractor, violated the California False Claims Act.

      Balfour Beatty has moved to dismiss the Qui Tam Plaintiffs' Complaint under Federal

Rule of Civil Procedure 12(b)(1), arguing that the Complaint is barred by the public disclosure bar

in the False Claims Act.  Dkt. No. 37.  Balfour Beatty has also moved for judgment on the

pleadings under Federal Rule 12(c), arguing that the Complaint is not plausible nor pleaded with

the requisite particularity.[1]  Dkt. No. 38.  For the reasons stated below, Balfour Beatty's motion to

---

[1] It is not clear to the Court why Balfour Beatty concurrently filed both a motion to dismiss and a
motion for judgment on the pleadings.  The Court presumes that this was not an attempt to evade
the page limits imposed by the Local Rules.  In any event, should Balfour Beatty move to dismiss
an amended complaint, it will be limited to one motion, whether styled a motion to dismiss or a
motion for judgment on the pleadings, unless the Court grants leave otherwise.

dismiss is DENIED and its motion for judgment on the pleadings is GRANTED.  Qui Tam

Plaintiffs' Complaint is DISMISSED WITHOUT PREJUDICE.  The Court also DENIES Qui

Tam Plaintiffs' request to compel discovery from Balfour Beatty.  Dkt. No. 47.

## BACKGROUND

Labor Code Section 1777.5 requires a public-works contractor to employ a minimum

number of apprentices, corresponding to the number of journeymen,[2] if the public-works

contractor "employs workers in any apprenticeable craft or trade" in performing any work under a

public-works contract.  Cal. Lab. Code § 1777.5(d).  The ratio of "work performed by apprentices

to journeymen employed in a particular craft or trade on the public work" may not be less than one

hour of apprentice work for every five hours of journeyman work.  Cal. Lab. Code § 1777.5(g).

Qui Tam Plaintiffs allege that over the last ten years, Balfour Beatty has performed public-works

projects where it employed workers to perform "Pipefitter-Steamfitter work processes"[3] but failed

to employ and train Pipefitter-Steamfitter apprentices, as required by Section 1777.5 and by the

public-works contracts governing the projects.[4]  Dkt. No. 37-2, ECF pages 2-16 ("Compl.") ¶ 20.

---

[2] A journeyman is "a person who has either (1) completed an accredited apprenticeship in his/her craft, or (2) who has completed the equivalent of an apprenticeship in length and content of work experience." Cal. Code Regs. tit. 8, § 205(a).

[3] The Complaint states that "Pipefitter-Steamfitter work processes" means "layout of process piping systems; installation of pressurized and process piping for hot and cold water, steam, gas, chemical process, air and vacuum systems; these work processes include cutting pipe, threading pipe, bending pipe, beveling pipe, welding pipe, soldering pipe, brazing pipe, grooving pipe, and cutting and assembling glass, fiberglass and plastic pipe; welding processes in connection with pipefitting and steamfitting, including arc welding, tungsten inert gas welding, orbital welding and oxy-acetylene cutting; installation of all equipment appurtenant to process piping, including pumps, compressors, heat exchangers and boilers; installation of cans, inserts and hangers for pipe; installation of pneumatic, hydraulic, and instrumentation tubing and control piping, and calibration of instrumentation tubing; operation and repair of power tools, hand tools and machinery used for pipefitting and steamfitting; handling construction materials and equipment used for pipefitting and steamfitting; rigging of pipe and related equipment; testing of piping systems." Compl. ¶ 11.

[4] Qui Tam Plaintiffs identify only one public-works contract at issue.  They allege that Balfour Beatty violated Section 6 of the public-works contract governing the Vineyard Water Treatment Plant project with the Sacramento County Water Agency, which provides that "The Contractor shall comply with Labor Code Section 1777.5, concerning the employment of apprentices. The Contractor shall be responsible for compliance by all Subcontractors." Compl. ¶ 19.  Qui Tam Plaintiffs do not identify public-works contracts that impose Section 1777.5's requirements on Balfour Beatty for the other projects.  Nonetheless, for purposes of this motion, the Court assumes that Balfour Beatty is required to comply with Section 1777.5 on all alleged projects.

United States District Court
Northern District of California

1   Qui Tam Plaintiffs allege that Balfour Beatty consequently violated the False Claims Act by

2   billing the Public Entities without disclosing the alleged Section 1777.5 violations, thereby falsely

3   certifying that it was in compliance with the public-works contracts.  *See, e.g., id.* ¶¶ 18-21.

4   The Complaint identifies six Public Entities with whom Balfour Beatty worked on seven projects:

5   - Sacramento County Water Agency—Vineyard Water Treatment Plant project

6   - Freeport Water Authority—Freeport Regional Water Intake Facilities project

7   - East Bay Municipal Utility District—Folsom South Canal Connection project

8   - City of Sacramento—Fairbairn Treatment Plant Expansion project

9   - City of Roseville—Granite Bay Water Treatment Plant project; Dry Creek Wastewater
10     Treatment Plant Expansion project

11  - City of Rio Vista—Rio Vista Wastewater Treatment Plant project

12      Qui Tam Plaintiffs do not allege specific facts regarding these projects.  Rather, they "are

13  informed and believe and thereupon allege that Defendant has violated its public-works contracts

14  and has made false claims for payment on numerous public-works projects throughout California."

15  *Id.* ¶ 25.

16      Qui Tam Plaintiffs allege four causes of action, all arising under the False Claims Act, Cal.

17  Govt. Code. § 12650, *et seq.*: i) submissions of false claims under Section 12651(a)(1); ii) use of

18  false records under Section 12651(a)(2); iii) use of false statements under Section 12651(a)(7);

19  and iv) failure to disclose false claims under Section 12651(a)(8).  All of the causes of action are

20  premised on Balfour Beatty's alleged violation of Labor Code Section 1777.5.

21                              **LEGAL STANDARD**

22      Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

23  if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

24  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

25  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is facially plausible when

26  the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

27  is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

28  omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

3

While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

The standard for deciding a motion for judgment on the pleadings under Rule 12(c) "is 'functionally identical' to [a motion under] Rule 12(b)(6)." *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). When deciding such a motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment on the pleadings should be granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal punctuation and citation omitted).

## DISCUSSION

## I.   MOTION FOR JUDGMENT ON THE PLEADINGS

Balfour Beatty moves for judgment on the pleadings on the grounds that i) the Complaint fails to plead plausible False Claims Act violations and ii) the claims are not pleaded with the particularity required by Federal Rule 9(b).

### A.   The plausibility of Qui Tam Plaintiffs' claims

Balfour Beatty's plausibility argument is centered on the parties' dispute over the proper interpretation of Section 1777.5. Balfour Beatty argues that if a public works contractor elects to

4

hire journeymen to work on a project, Section 1777.5 requires the contractor to hire a certain ratio of apprentices from the same occupation as the journeymen (e.g., laborer, pipefitter, carpenter, etc.). Dkt. No. 38 at 7. Qui Tam Plaintiffs respond that Section 1777.5 requires a contractor to hire apprentices whose state-approved apprenticeship programs encompass the type of work performed by the journeymen, irrespective of the journeymen's "craft or trade." In short, Balfour Beatty argues that the occupation of the journeymen dictates which apprentices a contractor must hire, whereas Qui Tam Plaintiffs argue that the nature of the work performed by the journeymen dictates which apprentices may be hired.

As noted below, the Court GRANTS Balfour Beatty's motion for judgment on the pleadings on the grounds that the Complaint is not pleaded with the specificity required by Rule 9(b). The Court therefore does not address the proper interpretation of Section 1777.5 at this stage. Qui Tam Plaintiffs are given leave to file an amended complaint. Should Balfour Beatty move to dismiss the amended complaint, the parties at that time may brief the proper interpretation of Section 1777.5. The Court will address the issue then, if appropriate.

### B.   Qui Tam Plaintiffs' claims do not satisfy Rule 9(b).

Balfour Beatty asserts that Qui Tam Plaintiffs' claims are not pleaded with sufficient particularity. The Court agrees.

Rule 9(b)'s requirement that claims grounded in fraud be pleaded with particularity applies to False Claims Act claims. *Cafasso,* 637 F.3d at 1054. "To satisfy Rule 9(b), a pleading must identify the 'who, what, when, where, and how' of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Id.* (internal punctuation and citation omitted).

### i.   Qui Tam Plaintiffs' allegations relating to unspecified projects

Qui Tam Plaintiffs allege that Balfour Beatty violated its public-works contracts and made false claims on public-works projects throughout California, including "but not limited to" the seven specific projects undertaken for the six public entities identified in the Complaint. Compl. ¶ 25. To the extent that Qui Tam Plaintiffs intend to assert claims relating to unspecified projects and public entities, those claims are neither plausible nor pleaded with particularity, and any such

5

1    claims are dismissed.

2            **ii.  Qui Tam Plaintiffs' allegations relating to identified projects**

3            Qui Tam Plaintiffs are "informed and believe and thereupon allege that Defendant has

4    violated its public-works contracts and has made false claims for payment . . . ." on the projects

5    identified above.  Compl. ¶ 25.  Elsewhere the Complaint alleges generally that "[d]uring the time

6    period relevant to this suit, on public-works projects on which Defendant employed workers to

7    perform Pipefitter-Steamfitter work processes, Defendant has failed to employ and train Pipefitter-

8    Steamfitter apprentices . . . ."  *Id*. ¶ 20.  The Complaint does not identify when Balfour Beatty

9    allegedly employed workers to perform Pipefitter-Steamfitter work processes, what those work

10   processes were, how many apprentices were required, or what apprentices Balfour Beatty hired.

11   The Complaint thus does not provide the "who, what, when, where, and how" of the misconduct

12   charged and does not satisfy Rule 9(b).  In order to defend itself against the allegation that it

13   violated Section 1777.5, Balfour Beatty must be informed of the work that it allegedly performed

14   that triggered the requirement to hire apprentices.  The complaint is similarly silent as to the False

15   Claims Act allegations as it does not allege when and in what statements and records  Balfour

16   Beatty impliedly certified that it was in compliance with Section 1777.5

17           "Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct

18   against which they must defend, but also to deter the filing of complaints as a pretext for the

19   discovery of unknown wrongs, to protect defendants from the harm that comes from being subject

20   to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties

21   and society enormous social and economic costs absent some factual basis."  *Bly-Magee v.*

22   *California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (citation and internal punctuation omitted).  Rule

23   9(b) is accordingly not satisfied even if Balfour Beatty can determine the general contours of what

24   it stands accused.

25           For the reasons stated, Balbour Beatty's motion for judgment on the pleadings is

26   GRANTED and the Complaint is DISMISSED WITH LEAVE TO AMEND.  Any amended

27   complaint shall address the deficiencies noted above.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.  MOTION TO DISMISS

Balfour Beatty argues that Qui Tam Plaintiffs' claims are barred by the public disclosure bar in the False Claims Act because the complaint is based on allegations or transactions publicly disclosed prior to the filing of complaint and the Qui Tam Plaintiffs are not the original sources of the information.  Balfour Beatty argues that the allegations or transactions in the Complaint were publicly disclosed in four different ways: (1) in a *qui tam* lawsuit filed on December 28, 2011 in Alameda County Superior Court, *East Bay Municipal Utility District, et al. ex rel. Cameron v. C. Overaa & Co.* (the "East Bay Action"); (2) in a class action lawsuit filed on December 30, 2011 in Alameda Superior Court, *Floyd Henson, et al. v. C. Overaa & Co.* (the "Henson Action"); (3) in other cases and published decisions relating to disputes between the Laborer and Pipefitter unions over apprentice hiring; and (4) in reports and investigations connected to Balfour Beatty's submission of certified payroll records pursuant to the California Labor Code.  The Court finds that the allegations and transactions at issue here were not previously disclosed in the asserted public disclosures and DENIES Balfour Beatty's motion to dismiss.[5]

The public disclosure bar[6] to the False Claims Act is "intended to bar parasitic or opportunistic actions by persons simply taking advantage of public information without contributing to or assisting in the exposure of the fraud."  *City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.*, 1 Cal. Rptr. 3d 312 (Ct. App. 2003).  In contrast, "[w]hen a totally different species of fraud has been disclosed or when the facts or documents on their face do not expose fraud, the *qui tam* complaint serves to alert the government to fraud it otherwise might never have discovered."  *State ex rel. Grayson v. Pac. Bell Tel. Co.*, 48 Cal. Rptr. 3d 427, 436 (Ct. App. 2006)

---

[5] Given that the allegations and transactions at issue here were not previously disclosed against Balfour Beatty, the Court does not reach whether the Qui Tam Plaintiffs are the "original sources" of the information.

[6] The False Claims Act was amended in 2012.  The relevant public disclosure language previously read, "No court shall have jurisdiction over an action under this article based upon the public disclosure . . . ." Cal. Gov. Code § 12652(d)(3)(A) (prior to 2012 amendments). The current language instead states "The court shall dismiss an action or claim under this section . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed. . . ." The amendment changes the public disclosure bar from a jurisdictional threshold to an affirmative dismiss, which changes the burden of persuasion.  The parties dispute whether the current or former language applies to this matter.  The Court need not resolve that question as the Court finds no public disclosure irrespective of which version of the statute is at issue.

1    (citation omitted).  "[T]he public disclosure bar should be applied only as necessary to preclude

2    parasitic or opportunistic actions, but not so broadly as to undermine the Legislature's intent that

3    relators assist in the prevention, identification, investigation, and prosecution of false claims."

4    *Wohlner*, 1 Cal. Rptr. 3d at 312.

5        **A.  The East Bay and Henson Actions**

6        The *qui tam* complaint in the East Bay Action mirrors the Complaint in this action.  *See*

7    Dkt. No. 37-2, ECF pages 66-80 ("East Bay Compl.").  It names as defendants a contractor named

8    C. Overaa and Company and Does 1-50.  East Bay Compl. ¶¶ 2-3.  Balfour Beatty is not a

9    defendant in the East Bay Action complaint and is not otherwise referenced in that complaint.  The

10   East Bay Action is brought on behalf of 13 public entities, only one of which, the East Bay

11   Municipal Utility District, is also a putative plaintiff in the present matter.  *Id.*  ¶ 1.  None of the

12   public-works projects identified in the East Bay Action complaint are at issue in the present

13   action.  *Compare id.* ¶ 25 *with* Compl. ¶ 25.  As in this case, the East Bay Action alleges that

14   "[d]uring the time period relevant to this suit, on public-works projects on which Defendant

15   employed workers to perform Pipefitter-Steamfitter work processes, Defendant has failed to

16   employ and train Pipefitter-Steamfitter apprentices as required by the laws and regulations

17   described above."  East Bay Compl. ¶ 25.

18       The Henson Action is a class action brought by pipefitter apprentices alleging that Overaa

19   and Does 1-50 failed to employ and train apprentices enrolled in the appropriate apprenticeship

20   programs in specific public-works projects where Overaa was the prime contractor.  *See* Dkt. No.

21   37-2, ECF pages 103-20 ("Henson Compl.").  Like the East Bay Action, Balfour Beatty is neither

22   a defendant nor referenced in the Henson complaint.  One of the projects at issue was funded by

23   the East Bay Municipal Utility District, but none of the projects identified in the complaint are at

24   issue in the present action.  The Henson complaint alleges that Overaa "employed workers to

25   perform Pipefitter-Steamfitter work processes on [a project for the East Bay Municipal District in

26   Oakland], but Defendant's certified payroll records for that project indicate that Pipefitter-

27   Steamfitter apprentices were not employed or trained as required by law.  Henson Compl. ¶ 20(c).

28       Balfour Beatty does not allege that it was accused of participating in the violations alleged

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    in the East Bay and Henson Actions or that the prosecution of those actions brought attention to its

2    own alleged violations of Section 1777.5.  Rather, Balfour Beatty argues that because the "central

3    allegation" in this case and in the East Bay and Henson Actions is the same—"that Pipefitter

4    apprentices are entitled to perform water treatment plant pipe work (and are entitled to perform

5    that work in the statutory ratios), and violations of the California Labor Code occurred when

6    others performed that work/those ratios were not met"—the allegations in the current Complaint

7    were publicly disclosed in the East Bay and Henson Actions  Dkt. No. 37 at 7, 8.

8         In support, Balfour Beatty argues that "strikingly similar facts" were present in *United

9    States v. Alcan Electrical & Engineering, Inc.*, 197 F.3d 1014 (9th Cir. 1999), in which the Ninth

10   Circuit affirmed the dismissal of a *qui tam* action under the public disclosure bar even though the

11   *qui tam* defendants were not identified in the earlier complaint.  The Court does not agree that

12   *Alcan* bears facts similar to those present here.

13        In *Alcan*, an IBEW union member filed an application with the District Court for the

14   District of Alaska for leave to file a suit against union officials.  The union member lodged his

15   proposed complaint with the court.[7]  The proposed complaint alleged that his local IBEW chapter

16   "has conspired with local contractors, through its Work Recovery Program, to deduct certain sums

17   from the Union members' paychecks, (2.5% of gross wages), who were working on State and

18   Federally funded projects, and then remit these funds back to the contractor in violation of Federal

19   Law." *Id.* at 1016.  The proposed complaint did not identify the "local contractors."  The union

20   member subsequently filed a *qui tam* action against the contractors based on the same allegations

21   stated in his proposed complaint.

22        The Ninth Circuit affirmed the district court's dismissal of the *qui tam* action on the

23   grounds that the proposed complaint constituted public disclosure, finding that the prior complaint

24   "alleged a narrow class of suspected wrongdoers-local electrical contractors who worked on

25   federally funded projects over a four-year period."[8]  The Circuit concluded that "the government

---

[7] The complaint was lodged, but not filed, and it was not under seal.  The district court found that
the proposed complaint was therefore available to the public.  *Id.* at 1016.

[8] The plaintiff also failed to establish that he was the "original source" of the information, as
required where there has been prior public disclosure.

could easily identify the contractors at issue." *Id.*

Unlike *Alcan*, the East Bay and Henson Actions do not relate to the same transactions by the same parties at issue in the *qui tam* complaint before the Court.  Balfour Beatty is correct that the alleged conduct in the East Bay and Henson Actions—failing to hire apprentices in the required ratio—mirrors the conduct alleged in the present complaint.  But that different actors, on different projects, allegedly violated the same laws that Balfour Beatty is now accused of violating, does not mean that the government was on notice of Balfour Beatty's alleged conduct.  In addition, unlike *Alcan*, Balfour Beatty is not part of an easily identifiable "narrow class of suspected wrongdoers."  In *Alcan* the defendants were local contractors that had contracted with a local IBEW chapter on federally-funded projects over a four year period.  Those same contractors and projects were at issue in the proposed complaint and the *qui tam* action.  In contrast, the projects and defendants identified in the East Bay and Henson Actions are different from the projects and defendants at issue in the present matter.  Consequently, unlike *Alcan*, in the present case the government would not have discovered Balfour Beatty's alleged conduct by investigating the allegations in the East Bay and Henson Actions.

Balfour Beatty also cites *Grayson*, 142 Cal. App. 4th at 748, from the California Court of Appeal for the Third District, and *United States ex rel. Findley v. FPC-Boron Employees' Club* 105 F.3d 675 (D.C. Cir. 1997), for the proposition that the East Bay and Henson Actions disclosed "general practices" which alerted the government to the alleged conduct at issue in this case and bar the present *qui tam* action.  In response, Qui Tam Plaintiffs cite *Wohlner*, 1 Cal. Rptr. 3d 312, from the California Court of Appeal for the Second District, where the court found that a prior complaint alleging that a contractor fraudulently billed a city did not bar a subsequent *qui tam* suit against the same defendant for fraudulently billing the same city because the prior lawsuit related to different instances of fraud.

In *Wohlner*, two prior lawsuits alleged that a city waste contractor improperly billed the city for increases in dumping fees paid by the contractor between 1990 and 1995, even though the contractor never incurred the costs and, under the governing contract, any increased dumping fees were not to be passed on to the city because the contract included automatic inflation adjustments.

A subsequent *qui tam* complaint brought claims against the same contractor for improperly billing the same city for different supposed dumping fee increases in 1980.  The court ruled that the prior suit did not constitute public disclosure of the allegations in the *qui tam* complaint because the prior complaints did not relate to the alleged fraudulent billing in 1980, but related to fraudulent billing in 1990 and 1995.  The court held that the *qui tam* complaint "is not based upon the public disclosure of allegations in the [prior] litigation" and, consequently, "does not constitute a 'parasitic' lawsuit," and was not barred.  *Wohlner*, 1 Cal. Rptr. 3d at 323.

In *Grayson*, a *qui tam* plaintiff alleged that Pacific Bell had not turned over the unused balances on its prepaid telephone cards to the state as required under the Unclaimed Property Law. The court found that prior disclosures of this practice in the news media, including discussions of the practice in a newsletter for unclaimed property administrators and a tax publication, "disclosed the questionable legality" of withholding unused phone card balances from unclaimed property filings.  *Grayson*, 48 Cal. Rptr. 3d at 434.  The court found that this disclosure "clearly alerted the government to defendants' failure to either report or escheat breakage."  The court therefore found that the complaint "merely echoe[d] what the government already knew and chose not to prosecute."  *Id.* at 435.

The *Grayson* court found a "fitting analogy" for the case before it in *Findley*.  There a *qui tam* plaintiff alleged that government-employee clubs from the Department of Justice and Bureau of Prisons illegally used federal resources to operate vending machines but kept the revenue from the vending machines.  *Findley*, 105 F.3d at 678.  The District of Columbia Circuit held that prior discussions of that practice, dating back over 40 years, in a Comptroller General Opinion, in the legislative history of the Randolph–Sheppard Act (governing vending facilities operated by the blind in federal buildings), and in a Federal Circuit opinion, constituted prior disclosure of the claims.  The court affirmed the district court's holding that based on the prior disclosure of that practice, "before the filing of this action, enough information was in the public domain to expose the allegation that government employees are perpetrating a fraud upon the government by maintaining vending machines on Federal property."  *Id.* at 679.  The court explained that the "complaint reveals allegations which substantially repeat what the public already knows and add

only the identity of particular employees' clubs engaged in the questionable and previously documented generic practice."

Of the ostensibly dueling opinions from the sister California courts of appeal, *Wohlner* and *Grayson*—and *Grayson's* "fitting analogy," *Findley*—the Court finds that the facts and reasoning of *Wohlner* have better application to the facts present here.  For the reasons stated above, the East Bay and Henson Actions did not put the government on notice of Balfour Beatty's allegedly fraudulent conduct.  Accordingly, Qui Tam Plaintiffs' lawsuit is not a "parasitic' lawsuit" and is not barred by the prior suits.  *See Wohlner*, 1 Cal. Rptr. 3d at 322 (public disclosure bar should not be construed "so broadly as to undermine the Legislature's intent that relators assist in the prevention, identification, investigation, and prosecution of false claims").

The Court further finds that the East Bay and Henson Actions, which are as vague and conclusory as the present action, do not constitute sufficient disclosures of a "general practice" relating to the conduct at issue such that it "clearly alerted the government" to Balfour Beatty's alleged conduct.  *Grayson*, 48 Cal. Rptr. 3d at 436.  Similarly, no documented general practice is identified in the East Bay and Henson Actions in remotely the same public way that would alert the government to the fraud alleged here against Balfour Beatty as occurred in *Findley*.

Balfour Beatty argues that "the *East Bay* and *Henson* lawsuits disclosed to the State, the named public entities, and the general public the allegation that California water treatment contractors—including contractors labeled "DOES 1 through 50" in the complaint—did not use Pipefitter apprentices or meet ratio requirements on water treatment plant construction projects." Dkt. No. 37 at 10.  Tellingly, Balfour Beatty does not cite the particular portions of the *East Bay* or *Henson* complaints that supposedly disclose the allegation that California water treatment contractors *in general* violate Section 1777.5.  The mere fact that those complaints named DOE defendants is not sufficient.  To the contrary, the DOE defendants in those suits were allegedly responsible for the violations alleged in those complaints; not for other generalized violations. *See, e.g.,* East Bay Compl. ¶ 3 ("Each fictitiously named Defendant is in some manner responsible or liable *for the unlawful acts and omissions alleged herein*.") (emphasis added).  Unlike *Grayson* and *Findley*, the East Bay and Henson Actions did not give the government any identifiable reason

12

1    to think that Balfour Beatty was guilty of the same conduct as the defendants in those actions.

2        **B.  Other lawsuits between the Pipefitters and Laborers**

3        Balfour Beatty argues that "at least four published federal and state judicial opinions in

4    California arising out of, and thoroughly documenting, the Northern California Pipefitter-versus-

5    Laborer dispute over water treatment plant work" constitute public disclosure of the allegations at

6    issue here.  As an example, Balfour Beatty cites *Pipe Trades Dist. Council No. 51 v. Aubry*, 41

7    Cal. App. 4th 1457, 1461 (1996), which states:

8              Both in Northern California and elsewhere in the nation
               jurisdictional disputes have regularly existed between the UA
9              [Pipefitters] and the Laborers. Focusing on recent times and
               Northern California, a long-running dispute has existed between
10             these unions as to which one has jurisdiction over the installation of
               various kinds of piping for various types of water treatment plants.

11   Dkt. No. 37 at 11.[9]

12       As an initial matter, Qui Tam Plaintiffs' allegations in the present Complaint relate to

13   conduct starting in October 2002.  Compl. ¶¶ 2, 5 (alleging conduct within 10 years of filing of

14   Complaint).  Given that the various complaints in the cases cited by Balfour Beatty were filed

15   before October 2002, it is not apparent to the Court how those actions can constitute disclosure of

16   alleged Balfour Beatty misconduct that had not yet occurred.  In any event, those cases do not

17   constitute public disclosures of the allegations at issue here for the same reasons that the East Bay

18   and Henson Actions do not: the present action alleges misconduct by a different defendant under

19   different contracts with different public entities in connection with different projects than those

20   cases.

21       **C.  Balfour Beatty's submission of certified payroll records**

22       The public disclosure bar applies if the allegations or transactions were previously

23   disclosed in, among other ways, an "investigation of the Legislature, the state, or governing body

24   of a political subdivision."  Gov. Code. § 12652(d)(3)(A).  Balfour Beatty argues that the payroll

---

[9] Balfour Beatty also cites, without elaboration, *United States ex rel. Local 342 Plumbers v. Dan Caputo Co.*, 321 F.3d 926 (9th Cir. 2003); *United States ex rel. Plumbers Local Union No. 38 v. C.W. Roen Constr. Co.*, 183 F.3d 1088 (9th Cir. 1999); *Huber, Hunt & Nichols, Inc. v. United Ass'n Journeymen & Apprentices Plumbing Indus.*, Local 38, 282 F.3d 746 (9th Cir. 2002); *Pipe Trades Dist. Council No. 51 v. Aubry*, 41 Cal. App. 4th 1457 (1996).

13

records it was required to provide to the Public Entities constitute an "investigation" within the meaning of the public disclosure. Balfour Beatty provides no authority for this argument, aside from a dictionary definition of the work "investigation." Dkt. No. 43 at 12. The Court is not persuaded that payroll records submitted to the Public Entities constitute "investigations" within the meaning of the public disclosure bar.

For the reasons stated, Balbour Beatty's motion to dismiss is DENIED.

## III. PARTIES' DISCOVERY DISPUTE

The parties have submitted a joint discovery dispute regarding Qui Tam Plaintiffs' inspection demands and interrogatories and Balfour Beatty's deposition questions about fee arrangements between Qui Tam Plaintiffs' counsel and other entities. Dkt. No. 47. Qui Tam Plaintiffs are not entitled to take further discovery until they file a complaint that complies with Rule 9(b). As the Ninth Circuit explained in *Bly-Magee*, 236 F.3d at 1019, "qui tam suits are meant to encourage *insiders privy to a fraud on the government* to blow the whistle on the crime. Because insiders privy to a fraud on the government should have adequate knowledge of the wrongdoing at issue, such insiders should be able to comply with Rule 9(b)."

Here, Qui Tam Plaintiffs have received discovery regarding the Vineyard Water Treatment plant project. That should be more than adequate to allow them to file a complaint with the necessary specificity if they can. The Court denies Qui Tam Plaintiffs' request that it compel Balfour Beatty to respond or produce documents in response to Qui Tam Plaintiffs interrogatories and discovery requests. *See, e.g., Cafasso*, 637 F.3d at 1057 ("This type of allegation, which identifies a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement, is precisely what Rule 9(b) aims to preclude."); *Periguerra v. Meridas Capital, Inc.*, 09-cv-4748 SBA, 2010 WL 395932, *5 (N.D. Cal. Feb. 1, 2010) ("Allowing Plaintiffs to conduct discovery in order to comport with heightened pleading requirement applicable to fraud-based claims is directly contrary to the purpose of Rule 9(b); namely, that plaintiffs show that there is some substance to their claim of fraud before subjecting a defendant to the rigors of the discovery process.").

Balfour Beatty has asked the Court to allow it to renew depositions of Qui Tam Plaintiffs

14

to obtain information regarding the nature of Qui Tam Plaintiffs' fee arrangements with counsel. Given that further discovery is stayed until Qui Tam Plaintiffs file a complaint that satisfies Rule 9(b), Balfour Beatty's request is moot. Balfour Beatty may renew this request when and if discovery re-commences.

### CONCLUSION

Balfour Beatty's motion to dismiss is DENIED. Dkt. No. 37. Balfour Beatty's motion for judgment on the pleadings is GRANTED (Dkt. No. 38) and Qui Tam Plaintiffs' Complaint is DISMISSED WITHOUT PREJUDICE. Any amended complaint shall be filed within 30 days of this order and shall address the deficiencies noted above.

The Court DENIES Qui Tam Plaintiffs' request that the Court compel Balfour Beatty to respond to Qui Tam Plaintiffs' inspection demands and interrogatories. Further discovery is STAYED until Qui Tam Plaintiffs file a complaint that satisfies Rule 9(b).

**IT IS SO ORDERED**.

Dated: December 19, 2013

_____
WILLIAM H. ORRICK
United States District Judge